BOARD OF EDUCATION OF DeKALB COMMUNITY UNIT SCHOOL DISTRICT NO. 428, Plaintiff-Appellee, v. JOSEPH M. CRONIN, Superintendent, Illinois Office of Education, Defendant-Appellant.

First District (4th Division)    No. 76-288

Opinion filed March 1, 1979.

William J. Scott, Attorney General, of Chicago (John D. Whitenack, Assistant Attorney General, of counsel), for appellant.

David P. Kula, of Anthony Scariano & Associates, P. C., of Chicago Heights, for appellee.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

On November 18, 1974, the plaintiff, Board of Education of DeKalb Community Unit School District No. 428, filed its complaint for declaratory relief in the circuit court of Cook County. Plaintiff contended that the defendant Superintendent of the Illinois Office of Education had incorrectly computed the amount of plaintiff's 1973-1974 State aid, and sought a construction of section 18—8 of the School Code (Ill. Rev. Stat. 1973, ch. 122, par. 18—8), that would entitle plaintiff to an additional amount of State aid. On December 2, 1975, the circuit court entered a summary judgment in plaintiff's favor. The defendant appeals and we reverse.

The issue presented for review is whether the manifest intent of the Illinois General Assembly is to use 1971-1973 statistics in the base year computations for resource equalizer aid.

The facts are as follows: In 1969 the Illinois State Legislature amended section 18—8 of the School Code to provide impaction aid reimbursements for the school year just ended to those eligible school districts which might make application for said reimbursements on or before August 15, 1969. On August 6, 1969, plaintiff school district made a timely application for impaction aid reimbursement for the 1968-1969 school year. In each of the school years succeeding 1968-1969, up to and including school year 1972-1973, the plaintiff school district (hereinafter referred to as "the District"), applied for and qualified for section 18—8 impaction aid reimbursement. Plaintiff district has received impaction aid reimbursements in each of the five years from 1969-1970 to and including 1973-1974, the payments received in each school year constituting reimbursement for the plaintiff's impaction aid claim of the previous school year.

In 1973, the Illinois General Assembly enacted an alternative school aid program referred to as the resource equalizer. This was an amendment to then existing section 18—8 of the School Code. Illinois school districts were given the option to choose whichever State aid program allowed the most fiscal assistance. The resource equalizer State aid formula was worded as follows:

"Each district shall be entitled to only ¼ of the calculated increase each year in excess of its actual entitlement, except it may earn an entitlement which includes proportionate increases if the pupil population increases. A district may not be paid a sum in excess of a 25% increase in the actual entitlement during the previous year as adjusted for weighted ADA but may in subsequent years continue to receive 25% increases until it is being paid the full amount of its annual entitlement * * *." Ill. Rev. Stat. 1973, ch. 122, par. 18—872(e).

It was this version of the amended statute that was in effect at the time the instant controversy arose. Despite the complexity of the resource equalizer formula it did not state how to calculate the base from which the 25% increases were allowed. There was no explicit reference made by the Illinois General Assembly as to the inclusion of impaction aid in the resource equalizer base.

In a letter to Illinois school superintendents dated July 18, 1973, Michael J. Bakalis, then Illinois Superintendent of Public Instruction interpreted the 1973 amendment to include impaction aid in the resource equalizer base. Bakalis stated that districts reimbursed under the resource equalizer cease to qualify for State impaction aid beginning July 1, 1973, and have monies received during fiscal 1973 from State impaction claims included in the base entitlement for 1972-1973. He also stated that payments were limited to one-fourth of the increase in the claim amount

over the 1972-1973 base entitlement year over 25 percent more than the prior year's entitlement, whichever was the lesser under the resource equalizer, except for growth districts.

Effective with the school year 1973-1974, the District opted for the resource equalizer method of State funding. Upon choosing the resource equalizer formula the District became ineligible for State funding under the traditional formula for school year 1973-1974 and later, *i.e.*, impaction aid. In 1973-1974, while the District received its estimated State aid (resource equalizer) for 1973-1974, it also received impaction aid reimbursement for the year 1972-1973.

On July 2, 1974, the Illinois General Assembly passed Public Act 78-1114, which again amended section 18—8 of the school Code (Ill. Rev. Stat. 1975, ch. 122, par. 18—8). In relevant part, it provided that in computing the base year entitlement under the resource equalizer formula:

> "(e) Each district shall be entitled to the 1972-1973 actual general State aid entitlement, Section 18—8.1 State aid, 1971-1972 State impaction aid, 1971-1972 tax equivalent grant aid, 1971-1972 State-owned housing aid plus ¼ of the difference between the projected claim amount and the total of the State support listed above during 1973-1974; plus 2/4 of the difference between the projected claim amount and the total of the State support listed above during 1974-1975; plus ¾ and 4/4 in subsequent years." Ill. Rev. Stat. 1975, ch. 122, par. 18—8(9)(e).

On November 18, 1974, the District filed a complaint for declaratory relief against the Superintendent of Public Instruction for the State of Illinois. It is not clear from the record the exact amount of school aid requested, but an additional amount of school aid was sought by plaintiff district. To support this claim for the additional amount of money the District claimed that the base year computation for the new resource equalizer aid should include 1972-1973 impaction aid of $621,074 received the following year instead of the 1971-1972 impaction aid of $461,334 received in 1972.

On January 17, 1975, the plaintiff filed its motion and notice for summary judgment. On January 20, 1975, defendant filed its answer. On February 19, 1975, the defendant moved that Joseph Cronin as Superintendent of the Illinois Office of Education be substituted as the successor defendant on this cause. Defendant also moved for summary judgment. By agreement the cross-motions for summary judgment were ordered for hearing. On December 2, 1975, the trial court entered its judgment order holding the plaintiff entitled to the additional State aid sought. From this order, the present appeal was brought.

Appellant contends that the manifest intent of the Illinois General

Assembly is to use 1971-1973 statistics in the base year computations for resource equalizer aid. We agree.

The proper construction of the statute in computing the base for resource equalizer school aid is the primary issue in this case. In *Chrysler Credit Corp. v. Ross* (1975), 28 Ill. App. 3d 165, 168, 328 N.E.2d 65, 68, the court stated:

> "In construing a statute, the primary concern is determination of the legislative intent behind its enactment."

In determining the intent of the legislature in enacting the resource equalizer formula it is necessary to study the provisions made in the statute. The statute provided:

> "(e) Each district shall be entitled to only ¾ of the calculated increase each year in excess of its actual entitlement, except it may earn an entitlement which includes proportionate increases if the pupil population increases. A district may not be paid a sum in excess of a 25% increase in the actual entitlement during the previous year as adjusted for weighted ADA but may in subsequent years continue to receive 25% increases until it is being paid the full amount of its annual entitlement." Ill. Rev. Stat. 1973, ch. 122, par. 18—872(e).

It appears from the statute that resource equalizer funding would be achieved in stages. After a school district elected to receive resource equalizer funding it would in subsequent years continue to receive 25% increases over its base year entitlement until it was being paid the full amount of its annual entitlement.

This complex formula was set forth in the amendment, but it did not specify how to compute the base from which the maximum 25% increases could be calculated. Numerous alternatives were available to the school districts. The law was not clear on its face and thus allowed several interpretations.

On July 18, 1973, the same day that the resource equalizer amendment was approved, Michael J. Bakalis, then Illinois Superintendent of Public Instruction, sent a letter to all Illinois school superintendents with material attached interpreting the amendment of section 18—8 of the school code. He interpreted the base to include impaction aid. Bakalis advised the school superintendents that:

> "*Recording of General State Aid Payment.* * * * Districts reimbursed under the 'resource equalizer' cease to qualify for state impaction aid beginning July 1, 1973, and have monies received during Fiscal 1973 from state impaction claims included in the base entitlement for 1972-1973."

This same letter also advised that:

> "d. Districts that received state impaction monies during Fiscal

1973 shall include these amounts in determining the base year entitlements."

On July 2, 1974, the General Assembly again amended section 18—8 to specifically provide in pertinent part:

"(e) Each district shall be entitled to the 1972-1973 actual general State aid entitlement, Section 18—8.1 State aid, 1971-1972 State impaction aid, 1971-1972 tax equivalent grant aid, 1971-1972 State-owned housing aid plus ¼ of the difference between the projected claim amount and the total of the State support listed above during 1973-1974; plus 2/4 of the difference between the projected claim amount and the total of the State support listed above during 1974-1975; plus ¾ and 4/4 in subsequent years." Ill. Rev. Stat. 1975, ch. 122, par. 18—8(9)(e).

The appellant contends that the 1974 amendment of section 18—8 was a mere clarification of the resource equalizer formula and not a change in the law as appellee would have us believe. We agree with the appellant's contention.

■■ It is a general rule that when the legislature amends a statute it is a change in the existing law. (*Quinn v. Retirement Board* (1972), 7 Ill. App. 3d 791, 797, 289 N.E.2d 117, 121.) The general rule creates a presumption that a change in the law was intended by the amendment, but it is a rebuttable presumption. The Illinois Supreme Court in a more recent decision stated that an amendment creates a presumption that it was intended to change the law as it formerly existed, but such a presumption is not necessarily controlling and may be overcome by more convincing considerations. *Bruni v. Department of Registration and Education* (1974), 59 Ill. 2d 6, 12, 319 N.E.2d 37, 40.

We consider more persuasive than the presumption of intent to change the law the facts that the legislature passed an unclear law which made it impossible for a precise interpretation. We also consider the fact that when Superintendent of Public Instruction Bakalis sent a communication to the Illinois superintendents attempting to interpret the statute so they would know exactly how to compute their base for State aid. This was immediately followed the next year by the General Assembly amending the statute to be more specific. The amendment as now stated is in accord with Superintendent Bakalis' interpretation. This in turn clarified the then existing section 18—8 under the 1973 Illinois Revised Statutes.

"The weight to be given a subsequent amendment in the construction of a statute and whether it will be held to be a manifestation of an intent to change the law as it previously existed or only a clarification of its terms, of course, must depend upon the circumstances involved." *Bruni*, at 12.

■■ The circumstances of this case compel us to conclude that the July 2, 1974, amendment was a clarification of the law the General Assembly had previously passed in 1973. By making such a clarification it placed the 1974 law in conformity with Superintendent Bakalis' interpretation.

■■ Therefore, it was the manifest intent of the Illinois General Assembly to use 1971-1973 statistics in the base year computations for resource equalizer aid. Those statistics include using the 1971-1972 total claim for State impaction aid.

For the foregoing reasons the judgment of the circuit court of Cook County is reversed.

Reversed.

LINN and ROMITI, JJ., concur.